IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| ROHN PRODUCTS INTERNATIONAL, LC, | * | |
| Plaintiff, | * | |
| v. | * | |
| SOFITEL CAPITAL CORPORATION, USA, INC., | * | CIVIL NO.: WDQ-06-0504 |
| Defendant/ Third-Party Plaintiff, | * | |
| v. | * | |
| MTS FIRST WIRELESS, LTD., ET AL., | * | |
| Third-Party Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Rohn Products International, LC, ("Rohn"), a construction company that sells and installs telecommunication structures, has sued Sofitel Capital Corporation, USA, Inc., ("Sofitel"), a bank that finances trade and infrastructure projects in emerging markets, for: 1) breach of contract for Sofitel's failure to make payments under a promissory note; and 2) fraud in the inducement for Sofitel's alleged misrepresentations that induced Rohn to prepare and manufacture tower structure products in Nigeria. Sofitel, in turn, has filed a third-party complaint against,

1

*inter alia*,[1] MTS First Wireless, Ltd., ("MTS"), a communications company in Nigeria and the borrower in this case; Charles Crophet Kimbrough, Senior Vice President of MTS; and Richmond Aggrey, Chairman and Chief Executive Officer of MTS, generally alleging that their acts, defaults, omissions, misrepresentations, breaches, and fraud caused and/or contributed to any harm that Rohn suffered.

Pending is Aggrey's motion to dismiss and Sofitel's motions for reconsideration and to strike Aggrey's motion to dismiss. For the reasons discussed below the three motions will be denied.

I.   Background

MTS and its bank, City Express, sought financing from Sofitel for a project involving the construction of cell phone infrastructure in Nigeria (the "Project").  Third-Party Compl. ¶¶ 22-23.  Prior to any commitment by Sofitel to secure financing for the Project, MTS contracted with Rohn to supply towers necessary for the Project.  *Id*. ¶ 31.  Sofitel subsequently entered into a loan agreement with MTS and City Express for the financing of the Project.  *Id*. ¶ 35.  Sofitel claims it relied on the third-party defendants representations in deciding to enter

---

[1] Sofitel also included City Express Bank, PLC, ("City Express"), Oluwafunke A. Smith, Head of Corporate and Commercial Banking for City Express, and Olushola A. Adeoti, Chief Executive Officer/Managing Director of City Express, in its third-party complaint.

into the financing arrangement.  *Id*. ¶ 38.

On the due date for the first payment, City Express and MTS defaulted on the loan payments due to Sofitel, *id*. ¶ 58, which caused a "cross-default" that precluded Sofitel from making further "advances" to Rohn, *id*. ¶ 61.  Instead of curing the default, "MTS informed Sofitel that it no longer wanted the loan." *Id*. ¶ 62.  Seeking payment under the promissory note, Rohn sued Sofitel, which, in turn, filed the third-party complaint on April 10, 2006, alleging: 1) common law indemnity; 2) contractual indemnity; 3) contribution; 4) breach of contract; 5) negligent misrepresentation; 6) civil conspiracy; and 7) constructive fraud against the third-party defendants.

On August 11, 2006, Kimbrough was served his summons and a copy of the third-party complaint; Aggrey was served three days later.  On August 30 and September 11, Aggrey and Kimbrough, respectively, filed an answer and counterclaim against Sofitel.

On October 3, Sofitel moved to dismiss the counterclaims of Kimbrough and Aggrey.  On November 22, 2006, Kimbrough filed a motion to dismiss the third party plaintiff's summons.  On November 28, 2006, Kimbrough filed a motion for leave to file a surreply to Sofitel's reply regarding Sofitel's motion to dismiss his counterclaim.  On December 13, 2006, Sofitel filed a pleading that addressed Kimbrough's surreply.

On February 9, 2007, this Court issued a memorandum opinion

and order that, *inter alia*,[2] granted Kimbrough's motion to dismiss and denied Sofitel's motion to strike Kimbrough's surreply.

II.  Analysis

A.   Motion for Reconsideration

Sofitel urges the Court to reconsider its ruling on Kimbrough's motion to dismiss and Sofitel's motion to strike. Under Federal Rule of Civil Procedure ("FRCP") 59(e), a court may grant a motion for reconsideration to: 1) accommodate an intervening change in controlling law; 2) account for new evidence previously unavailable; or 3) correct a clear error of law or prevent manifest injustice.  *Bogart v. Chapell,* 396 F.3d 548 (4th Cir. 2005).

Sofitel argues that the Court: (1) incorrectly applied the timeline, established by the Federal Rules of Civil Procedure, that governs motions to strike; and (2) misunderstood its motion. It avers that its motion to strike was a timely and appropriate response to Kimbrough's pleading.  Although the Court finds no clear error, for the sake of clarity, it will outline the events which led to its decision to grant Kimbrough's motion to dismiss

---

[2] The Court granted Kimbrough's motion to file an amended answer and amended counterclaim, dismissed the counterclaim of Aggrey and amended counterclaim of Kimbrough, and dismissed Kimbrough's motion for leave to file a surreply.

and deny Sofitel's motion.

On November 22, 2006, Kimbrough filed his "Motion for Dismissal of Third Party Plaintiff's Summons in a Civil Action." Paper No. 43.  This motion sought to dismiss Sofitel's 'summons' under many of the grounds set forth in FRCP 12(b).  Under Local Rule 105.2.a and FRCP 6(e), a memorandum in opposition to this motion should have been submitted by December 11, 2006 (14 days under the Local Rule plus 3 days under FRCP 6(e)).

On November 28, 2006, Kimbrough filed his "Motion for Leave to File Sur-Reply [sic]to Defendant/Third-Party Plaintiff's (TPP) Reply to Third-Party Defendant's Response to Motion to Dismiss Counter-Claim of Charles Kimbrough."  This motion contained the surreply.  At that time, the Court had received Sofitel's motion to dismiss Kimbrough's Counterclaim, (Paper No. 34); Kimbrough's Response, (Paper No. 38); and Sofitel's Reply, (Paper No. 40). Kimbrough's motion, (Paper No. 44), sought to submit a surreply for the Court to consider in its decision on Sofitel's motion to dismiss.  Sofitel's response to this motion would have been due December 15, 2006.  Local Rule 105.2.a; Fed. R. Civ. P. 6(e).

Sofitel never responded to Kimbrough's motion to dismiss. On December 13, 2006, rather than file a direct response to Kimbrough's motion to dismiss and a response to Kimbrough's unrelated surreply motion, Sofitel filed a motion, (Paper No. 46), titled: "Defendant/Third-Party Plaintiff's Motion to Strike

and Response to Third-Party Defendant's Motion for Leave to File
Surreply." The title suggests no relationship to Kimbrough's
motion to dismiss. The motion sought to respond to "Kimbrough's
'Motion for Leave to File Sur-reply [sic] to Defendant/Third-
Party Plaintiff's (TPP) Reply to Third-Party Defendant's Response
to Motion to Dismiss Counter-claim of Charles Kimbrough."
Moreover, although the body of the motion sought to "Strike
Third-Party Defendant's . . . 'Motion for Dismissal of Third
Party Plaintiff's Summons in a Civil Action,' Sofitel incorrectly
considered it to be "Kimbrough's Surreply" and incorrectly
labeled it as such. (Paper No. 46, at 1, 3). As a result,
Sofitel included misdirected generic arguments that Kimbrough's
'surreply:' (1) rehashed arguments in Kimbrough's response; (2)
included arguments that could have been raised in his response;
and (3) did not allege that any claim addressed was first raised
in Sofitel's reply. Although its arguments may be valid if
directed against the actual surreply which was part of
Kimbrough's motion for leave to file a surreply, they are not
responses to Kimbrough's motion to dismiss. At the time of the
Court's February 9 Memorandum and Opinion, nearly two months
later, Sofitel had not submitted any challenge addressing
Kimbrough's motion to dismiss.

Even if Sofitel's filing had addressed Kimbrough's motion to
dismiss, it was not timely. Sofitel now relies on FRCP 12(f)

to justify the timeliness of its motion to strike.  Rule 12(f) establishes two time periods within which a party may move to strike a pleading: (1) "[u]pon motion made by a party *before* responding to a pleading[;]" and (2) "if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party."  Fed. R. Civ. P. 12(f) (emphasis added).  As Kimbrough's motion to dismiss permitted a responsive pleading, a motion to strike must be made before responding to a pleading.  Here, Sofitel had not responded to Kimbrough's motion to dismiss, but the time to do so had passed and, therefore, so had its time to file a motion to strike Kimbrough's motion to dismiss.

Sofitel may not save its failure to respond to Kimbrough's motion to dismiss in time by improperly and unilaterally choosing to relabel that motion as Kimbrough's surreply.  Kimbrough's surreply is actually part of his motion for leave to file a surreply.  See Paper No. 44 (responding to Sofitel's November 2, 2006 Memorandum, i.e. Sofitel's Reply).  As Sofitel's response to Kimbrough's motion for leave to file a surreply was not yet due, Sofitel attempted to use its timely challenge to that motion to reach back and bring Kimbrough's Motion to Dismiss within its right to respond.

Sofitel never responded to any of the arguments in Kimbrough's motion and thus failed to challenge its grounds or carry any burdens which the motion placed on it.  Moreover, even

if its response had addressed the motion to dismiss, it was not
timely.

B.   The Motion to Dismiss

On April 10, 2006, Sofitel filed its third party complaint
against, *inter alia*, Aggrey.  On August 14, 2006, the summons,
issued by the Court on April 12, was served on Aggrey.  On August
30, Aggrey filed his Answer and Counterclaim against Sofitel.   On
February 22, 2007, Aggrey filed a motion to dismiss Sofitel's
third party complaint.  Sofitel has moved to strike Aggrey's
motion for undue delay.

Sofitel argues that FRCP 12(a) "provides that any motion by
Aggrey to dismiss the Third-Party Complaint should have been
filed 'within 20 days after being served with the summons and
complaint.'"  Mem. Supp. Mot. to Strike at 7 (*quoting* Fed. R.
Civ. P. 12(a)).  Rule 12(a) actually states that Aggrey "shall
serve *an answer* within 20 days after being served with the
summons and complaint." Fed. R. Civ. P. 12(a) (emphasis added).
Aggrey's timely Answer and Counterclaim referred to the defenses
listed in 12(b) (thus preserving them) and requested that the
Court dismiss the third party complaint against him.
Accordingly, the motion to strike will be denied and the motion
to dismiss will be considered on its merits.[3]

---

[3] Defenses 8-10 fail to state any grounds upon which
dismissal can be sought.  As a result, the Court will analyze the

A motion "shall *state with particularity the grounds therefor*, and shall set forth the relief or order sought." Fed. R. Civ. P. 7(b) (emphasis added).  However, the Court is mindful that when dealing with a *pro se* party, the Court should construe their pleadings liberally.  *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 252 (4th Cir. 2005).  Indeed, *pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

1.   Lack of subject matter jurisdiction

FRCP 12(b)(1) governs motions for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Sofitel bears the burden of proving that subject matter jurisdiction exists.  *O'Meara v. Waters*, 464 F.Supp.2d 474, 476 (D. Md. 2006).  A district court "will only grant the 12(b)(1) motion 'if the material jurisdictional facts *are not in dispute* and the moving party is entitled to prevail as a matter of law.'" *Moffett v. Computer Sciences Corp.*, 457 F.Supp.2d 571, 578 (D. Md. 2006) (*quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)) (emphasis added).

Although Aggrey offers no argument for this ground, he states that "28 U.S.C. § 1332(a)(1) can not [sic] be invoked" as support for his lack of personal jurisdiction claim.  Section

---

other grounds for dismissal offered by Aggrey.

9

1332 relates to one type of subject matter jurisdiction and requires diversity of citizenship and an amount in controversy in excess of $75,000.  Specifically, the subsection Aggrey sites addresses the diversity of the parties.

Sofitel's Third Party Complaint, however, asserts that subject matter jurisdiction exists under 28 U.S.C. § 1332 and in support alleges that: (1) there is complete diversity of citizenship between Sofitel and the Third Party defendants "all of whom are foreign corporations or citizens of different states[;]" and (2) the amount in controversy exceeds $75,000.  As Aggrey does not challenge the allegations by citing a reason why diversity does not exist and this Court finds that diversity exists on the face of the complaint, the Court cannot dismiss for lack of diversity at this time.

2.   Lack of personal jurisdiction

FRCP 12(b)(2) allows for the defense of lack of personal jurisdiction.  As the Court will decide the motion without conducting an evidentiary hearing, Sofitel "need only make a prima facie showing of personal jurisdiction." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  Moreover, the Court "must take all disputed facts and reasonable inferences in favor of the plaintiff." *Id*.

For a district court to assert personal jurisdiction, "two

10

conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id*. As Maryland's long-arm statute is coextensive with the due process requirements, the two inquiries merge. *Id*. at 396-97.

The Fourth Circuit has stated that "[a] court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Id*. (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The minimum contacts analysis can result in two types of personal jurisdiction, "specific jurisdiction" and "general jurisdiction." Specific jurisdiction involves an analysis of the conduct giving rise to the suit. *Id*. To determine if specific jurisdiction exists, a court must consider: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id*. at 397.

As support for his argument that he is entitled to dismissal

11

for lack of personal jurisdiction, Aggrey simply states that he "was not domiciling [sic] in the USA during the 'Claim Period.'" Aggrey offers nothing more and does not contest Sofitel's allegations.  Sofitel, however, has alleged that Aggrey, as Chairman and C.E.O. of MTS, acted as an "agent, officer, employee, representative and principal with actual and apparent authority to bind MTS" in its transaction with Sofitel.  Third Party Compl. ¶¶ 16-17.  Moreover, Aggrey visited Sofitel's Annapolis, Maryland office to discuss the transaction giving rise to this case.  *Id*. ¶¶ 28-29.  On a separate occasion Sofitel met with Aggrey, who assured Sofitel of the details of the financing arrangement.  *Id*. ¶¶ 39-40.  Finally, Aggrey allegedly made representations to Sofitel that MTS would indemnify Sofitel for all exposure and liability caused by their failure to pay Sofitel.  *Id*. ¶ 63.  Accordingly, Sofitel has sufficiently alleged that Aggrey purposefully availed himself of the privilege of conducting activities in Maryland and that the claims at issue arise out of that conduct.

In assessing the reasonableness of asserting personal jurisdiction the Supreme Court has said:

> A court must consider the burden on the defendant, the
> interests of the forum State, and the plaintiff's interest
> in obtaining relief. It must also weigh in its determination
> the interstate judicial system's interest in obtaining the
> most efficient resolution of controversies; and the shared
> interest of the several States in furthering fundamental
> substantive social policies.

*Asahi Metal Industry Co., Ltd. v. Superior Court of Calif.,
Solano County*, 480 U.S. 102, 113 (1987).

First, the burden on Aggrey in litigating in Maryland is not
too great as he has spent the time and resources necessary to
travel to Maryland to arrange the financing agreement that he has
now allegedly breached.  Second, Maryland has an interest in
enforcing contracts and protecting its businesses from the
misrepresentations and defaults alleged in this case.  Third,
trying Aggrey in this Court would allow for efficient resolution
as Sofitel is already involved in litigation over the financing
of the Project in this court.  It is reasonable for Aggrey to
have foreseen that he could be haled into a Maryland court for
his interaction with Sofitel, and thus, exercising personal
jurisdiction over Aggrey would not offend traditional notions of
fair play and substantial justice.

3.   Improper venue

"To survive a motion to dismiss based on improper venue, a
plaintiff need only establish a prima facie showing that venue is
proper." *Equal Rights Center v. Equity Residential*, 2007 WL
1111451, *4 (D. Md. 2007) (*citing Mitrano v. Hawes*, 377 F.3d 402,
405 (4th Cir. 2004)).  In addition, all inferences must be drawn
in Sofitel's favor.  *Id.*  In a case whose subject matter
jurisdiction is founded on diversity, venue is proper in:

(1) a judicial district where any defendant resides, if all

defendants reside in the same State,
(2) a judicial district in which a substantial part of the
events or omissions giving rise to the claim occurred, or a
substantial part of property that is the subject of the
action is situated, or
(3) a judicial district in which any defendant is subject to
personal jurisdiction at the time the action is commenced,
if there is no district in which the action may otherwise be
brought.

28 U.S.C. § 1391(a).  As the financing agreement was arranged in

Maryland with a Maryland lender, Sofitel has established a prima

facie case of proper venue under section 1391(a)(2).

4.   Insufficiency of process

Aggrey argues that Sofitel failed to effect service under

Local Rule 103.8.a or FRCP 4(b).  Under Local Rule 103.8.a, if a

party demanding relief does not effect service of process within

120 days of filing the pleading seeking such relief, the Court

may order the party to show cause why the claim should not be

dismissed and shall dismiss the claim if the party does not

comply with that order.  Local Rule 103.8.a; see also Fed. R.

Civ. P. 4(m).  FRCP 4(b) simply governs the issuing of a summons.

In support of his motion, Aggrey simply notes that "[a]

summons . . . shall be issued for each defendant to be served."

As a summons was properly issued on April 12, 2006, (Paper No.

10), Sofitel has not run afoul of FRCP 4(b).  As Sofitel filed

the third party complaint on April 10, it should have effected

service by August 8.  Service upon Aggrey was effected, however,

on August 14.  As the Court did not request a showing of good

cause under the Local Rule or provide notice to Sofitel under
FRCP 4(m), service was ultimately effected just six days late,
and the Court finds no prejudice by the delay, the Court finds
this grounds for dismissal unavailing.

5.    Insufficiency of service of process

        Aggrey asserts that there was insufficient service of
process because Sofitel did not include the correct address for
MTS.  As Aggrey offers no argument that *his* process was
insufficient and a return of service was filed indicating that
service occurred properly on August 14, 2006, (Paper No. 29), the
Court rejects this grounds for dismissal.

6.    Failure to state a claim upon which relief can be granted

        Although Aggrey simply states that Sofitel fails to state a
claim upon which relief can be granted as his 'sixth defense,'
his eleventh defense seems to restate Rule 12(b)(6) by saying
that Sofitel "fails to state or demonstrate a positive wrong."

        Under Rule 12(b)(6), a motion to dismiss should be granted
"only if it is clear that no relief could be granted under any
set of facts that could be proved consistent with the
allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514
(2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73
(1984)), *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d
1130, 1134 (4th Cir. 1993).  All allegations are treated as true,

and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan*, 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D. Md. 1997) *aff'd* 151 F.3d 180 (4th Cir. 1998).  The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  *Id.*

As support for this grounds for dismissal, Aggrey asserts that Sofitel has "made un-substantiated allegations surrounding a breach of Contract between [it] and MTS First Wireless Ltd/City Express Bank . . . both of Nigerian corporate registration. Resolution of any contractual disputes should be governed by the mutually agreed terms defined therein by the respective parties. A perusal by the Court of all documentation will demonstrate that Aggrey is not complicity [sic] in this Civil Action initiated by [Sofitel]."  Mem. Supp. Mot. to Dismiss at 5.  Elsewhere, Aggrey asserts that Sofitel "has not provided a scintilla of factual evidence" and must "materially support his claim with evidentiary facts."  *Id.* at 2.

In a motion to dismiss under 12(b)(6) Sofitel need not provide evidentiary support or substantiated allegations; indeed, the Court treats Sofitel's allegations as true.  Dismissal is only warranted if it appears that Sofitel cannot prove any set of

facts to support the allegations.  Aggrey's challenge seems more focused on the standards necessary to prevail in a motion for summary judgment; however, Aggrey has not offered any 'documentation' that would support his claim that Sofitel has no evidentiary support.

Applying a liberal construction, Aggrey's motion to dismiss may challenge the sufficiency of Sofitel's breach of contract claims.  "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."  *Taylor v. NationsBank, N.A.,* 365 Md. 166, 175 (2001).  Sofitel has adequately alleged that Aggrey participated in: (1) the creation of the promissory note; and (2) the default on the loan agreement.  Moreover, without the contract the Court cannot determine whether Aggrey's assertion that contractual disputes should be governed by the contract has any effect on Sofitel's ability to state a claim.  Accordingly, Aggrey will not prevail on this ground.

7.  Failure to join an indispensable party

Aggrey next asserts that Sofitel failed to join an indispensable party because it "has failed to ensure that all parties essential to a fair resolution of the suit are present . . . including the MTS First Wireless's contract person."  The Court cannot assess whether Sofitel has failed to join a party

17

without knowing the party's identity, so Aggrey's challenge will be limited to Sofitel's failure to include the 'contract person.'

Rule 19(a) states that a party is indispensable if

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

Fed. R. Civ. P. 19(a).  Aggrey does not describe why the 'contract person' is indispensable.  Moreover, there is no evidence or argument that complete relief cannot be accorded without the 'contract person.'  In addition, Aggrey has not explained how the absence of the 'contract person' would "impair or impede the person's ability to protect" their interest or leave Aggrey or others subject to substantial risk of multiple or inconsistent obligations.  Without more, the Court cannot conclude that the unidentified 'contract person' is indispensable.

III. Conclusion

For the reasons discussed above, the three pending motions will be denied.

<u>May 31, 2007</u>                    _____/s/_____
Date                                  William D. Quarles, Jr.
                                      United States District Judge

18