IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Northern Division*

|  |  |
|---|---|
| ROHN PRODS. INT'L, LC, | * |
| Plaintiff, | * |
| v. | Case No.: 06-504-WDQ |
| SOFITEL CAPITAL CORP. USA, INC. | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion to Enforce Settlement Agreement, Paper No. 124, that Plaintiff Rohn Products International, LC ("Rohn") filed; the Opposition to Motion to Enforce Settlement, Paper No. 129, that Defendant Sofitel Capital Corporation USA, Inc. ("Sofitel") filed; and Plaintiff's Response to Defendant's Opposition, Paper No. 131. For the reasons stated herein, I recommend that the Court GRANT Plaintiff's Motion to Enforce Settlement Agreement. This Order disposes of Paper Nos. 124, 129, and 131.

I.  BACKGROUND

Rohn filed a Complaint against Sofitel, alleging breach of contract and fraud. Compl. 7 & 8, Paper No. 1. The parties appeared before Judge Gauvey for a settlement conference on January 14, 2009. Docket Entry. Defendant moved to dismiss third-party defendants on January 19, 2009, stating that "Sofitel has reached a settlement with the Plaintiff Rohn Products International LLC." Paper No. 120. On January 20, 2009, Judge Quarles issued a Settlement Order (Local Rule 111), in which he stated: "This Court has been advised by the parties that the

above action has been settled, including all counterclaims, cross-claims and third-party claims, if any." Paper No. 121.

Plaintiff's counsel sent defense counsel an e-mail on January 20, 2009, in which he stated that he was enclosing a "proposed settlement agreement," which he also referred to as "more formal draft settlement papers" for the "previously submitted settlement in this action." Pl.'s Resp. Ex. F. The attached settlement agreement ("Pl.'s 1/20/09 Agr.") stated that "the Parties to this Agreement settled this case before the District Court on January 14, 2009, but now wish simply to finalize that settlement." Pl.'s 1/20/09 Agr. 2. According to its terms, Defendant would pay Plaintiff $300,000 within six months and another $50,000 within a year of the first payment, and time was "OF THE ESSENCE"; Defendant would provide an affidavit of confession of judgment for $465,000; both parties would offer mutual general releases; the parties had not assigned any relevant interests; and the terms would remain confidential. *Id*. §§ 1-3, 8, 10.

On January 27, 2009, in response to a "query" from Defendant, Plaintiff's counsel e-mailed Defense counsel that Plaintiff would agree to modify the payment schedule, but "nothing [in the e-mail] should be considered to mean that the current deal is not still in place or that my client is waiving any rights to enforce the deal that was agreed to in Court." Pl.'s Resp. Ex. G. On February 13, 2009, Plaintiff's counsel e-mailed Defense counsel, referring to "the settlement agreement entered into by [Defendant] in open court on January 14, 2009. *Id.* Ex. H. Again, on February 27, 2009, in an e-mail to Defense counsel, Plaintiff's counsel referred to "the terms agreed upon before the United States Magistrate Judge on January 14, 2009," and stated that "[n]othing [in the e-mail] should be construed even as a suggestion that [the] existing agreement is not fully enforceable." *Id.* Ex. I. In a March 6, 2009 e-mail to Defense counsel, Plaintiff's

counsel again agreed to modify the payment schedule, "with all other terms of the current agreement remaining in place." *Id.* Ex. J.

On March 10, 2009, Ms. Farnan, as an authorized representative of Sofitel, executed a settlement agreement ("Def.'s 3/10/09 Agr.") which stated that "the Parties to this Agreement settled this case before the District Court on January 14, 2009, but now wish simply to finalize that settlement." Def.'s Opp'n Ex. C, Paper No. 129-3. The settlement agreement provided that Defendant would pay to Plaintiff $50,000 by May 14, 2009 and $200,000 by August 14, 2009, and that those payments together would be the "Initial Settlement Payment"; and an additional $100,000 would be paid within a year of the Initial Settlement Payment, for a total of $350,000, with time being "OF THE ESSENCE." Def.'s 3/10/09 Agr. § 1. It also provided for mutual general releases (noting that it was the "express intent of all Parties that the foregoing provisions constitute full, mutual general releases by and between Parties as to any and all actions or potential actions"); that the parties had not assigned any relevant interests; and that the terms would remain confidential. *Id.* §§ 2, 7, 9. While the body of the agreement did not refer to a confession of judgment for $465,000, the last page listed as an attachment a "Confession of Judgment Agreement dated March 10, 2009," and attached was a Confession of Judgment, executed by Ms. Farnan before a notary, which provided that Sofitel "confesse[d] judgment [t]herein and authorize[d] the entry of judgment against it and any and all assets thereof in favor of Rohn, in the sum of Four Hundred and Sixty-Five Thousand Dollars ($465,000.00), plus interest accruing less any amounts paid to Rohn prior to the entry of said confession judgment . . . ." Confession of Jmt. ¶ 3. The affidavit further stated that the agreement provided for Sofitel's payment of $350,000 to Rohn by the dates set forth in the agreement, and that "[t]he

3

Parties agreed to these terms during a mediation session . . . in the United States Court on January 14, 2009." *Id.* ¶ 4.

On March 11, 2009, Plaintiff's counsel informed Defense counsel via e-mail that he could not "accept unilateral changes from [Defendant] on items that have legal significance," but neither party identified those changes for the Court. Def.'s Opp'n Ex. F, Paper No. 129-6.

On March 16, 2009, Plaintiff filed its Motion to Enforce Settlement Agreement, insisting that the parties "agreed to settle the matter" and entered into a settlement agreement on January 14, 2009, with the following terms:

A. The Parties would exchange mutual general releases;
B. Sofitel would make payment to Rohn in the amount of $350,000.00 dollars to be paid as follows:
   i. $300,000.00 on or before July 14, 2009; and
   ii. $50,000.00 on or before the one-year anniversary of the initial payment, but in no event later than July 14, 2010;
C. Sofitel would provide a Confession of Judgment in the amount of $465,000.00 as security for its payment of the settled amounts (the $465,000.00 the approximate amount of the underlying promissory);
D. A representation by Rohn that it had not assigned the underlying Note, or any portion of or interest therein, to any third-party; and
E. That the terms of the Settlement would remain confidential between the parties, albeit with the usual business and legal caveats.

Pl.'s Mot. ¶¶ 3-4. Plaintiff claims that "a final version of the settlement papers were circulated early on March 13, 2009," *id.* ¶ 7, but later that same day Sofitel informed Rohn that it was "withdrawing its counsel's authority to settle this matter," *id.* ¶ 8. Plaintiff asks the Court to enter judgment in its favor in the amount of $465,000 plus interest. *Id.* at 4.

In its Opposition, Defendant argues that "the parties were unable to reach agreement on critical terms of a settlement (i.e. the scope of release terms, the timing and amounts of

4

settlement payments, and the terms of a confessed judgment)." Def.'s Opp'n 2. In its view, "the fact that no agreement was reached during the January 14, 2009 mediation is plainly reflected in the correspondence between counsel and the draft settlement agreements exchanged between Rohn and Sofitel thereafter." *Id.* at 5. Defendant points to two "settlement offer[s]" it made "in the form of an executed settlement agreement," on March 10 and 20, 2009, both of which "Rohn rejected." *Id.* at 5-6; *see id.* Ex. C & D (settlement agreements signed by Ms. Farnan on March 10 and 20, 2009). Defendant claims that "[o]n March 13, 2009, Sofitel rejected Rohn's proposed settlement terms and Sofitel withdrew its previous settlement offer." *Id.* at 6. According to Defendant, "[a] comparison of the executed draft Settlement Agreement forwarded by Sofitel to Rohn on March 20, 2009 and the email from Ethan Leonard dated March 23, 2009 reflects the ongoing inability of the parties to agree on material terms of a settlement such as the amounts and timing of settlement payments, the breadth and scope of any release, and the amount of any confessed judgment required by Rohn." *Id.* at 7; *Compare* Ex. D *with* Ex. G (March 23, 2009 Leonard email).

Plaintiff argues in its Response to Defendant's Opposition to Plaintiff's Motion to Enforce Settlement that Defendant's Opposition was over four months late and should not be considered by the Court. Pl.'s Resp. 1. In any event, Plaintiff insisted that its exchanges with Defendant never amounted to a waiver of its right to enforce the settlement agreement entered into on January 14, 2009. *Id.* at 2. In support of the conclusion that the parties reached a settlement agreement, Plaintiff states that "had settlement not been reached, the matter would not have been referred back to Judge Quarles for entry of a Local Rule 111 [Settlement] Order." *Id.* at 3. Plaintiff also points out that Defendant stated in other filings that it "reached a settlement

with the Plaintiff," and when Plaintiff referred to the settlement in correspondence, Defendant said nothing to the contrary. *Id.* at 6.

Judge Quarles referred the case to Judge Gauvey for a report and recommendation on the Motion. Paper No. 128. Judge Gauvey recommended that "the Court find that a settlement has occurred as a matter of law." Report & Recommendation 6, Paper No. 133. In his February 22, 2010 Memorandum Opinion, Paper No. 137, Judge Quarles adopted Judge Gauvey's Report and Recommendation. Mem. Op. 1. However, noting that "an agreement to settle is not necessarily a contract" and that "it is possible that the agreement reached at the mediation is not a contract," Judge Quarles concluded that Judge Gauvey "believed merely that some agreement had been reached." *Id.* at 13. He explained: "A contract requires definite material terms; a dispute about those terms is a dispute about the existence of a contract." *Id.* Therefore, he ordered that "a hearing will be held to determine whether that agreement is enforceable as a contract." *Id.* On February 23, 2010, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Quarles referred this case to me for an evidentiary hearing and report and recommendation on this motion. Paper No. 139.

In an April 15, 2010 letter to the Court, Plaintiff agreed "to provide the Court with any additional submissions or evidence that it may require" with regard to the alleged settlement agreement, in lieu of appearing for an evidentiary hearing. Paper No. 44. In an April 14, 2010 letter to the Court, Defendant withdrew its request for a hearing on the Motion to Enforce Settlement and asked that "the Court simply consider the written submissions of the parties in rendering a decision on the settlement issue." Paper No. 143. In accordance with the parties' wishes, no hearing was held.

II. ANALYSIS

When parties to litigation pending in district courts enter into agreements to settle their disputes, the courts "have inherent authority, derived from their equity power, to enforce settlement agreements." *Williams v. Prof'l Transp., Inc.*, 388 F.3d 127, 131-32 (4th Cir. 2004); *see Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002); *Millner v. Norfolk & W. Ry.*, 643 F.2d 1005, 1009 (4th Cir. 1981); *King v. Sallie Mae, Inc.*, No. PJM-08-2934, 2009 WL 2596643 (D. Md. Aug. 20, 2009). But, "[i]f there is a factual dispute over the existence of an agreement, or over the agreement's terms, the district court may not enforce a settlement agreement *summarily*." *Hensley*, 277 F.3d at 540-41 (emphasis in original) (footnote omitted); *see Williams*, 388 F.3d at 132. The court first must "conduct a plenary evidentiary hearing and make findings on the issue." *Williams*, 388 F.3d at 132; *see Millner*, 643 F.2d at 1009; *Hensley*, 277 F.3d at 541. Before the court may enforce the agreement, it "'(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions.' The fact that a party may have 'second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement.'" *King*, 2009 WL 2596643, at *3 (quoting *Hensley*, 277 F.3d at 540-41) (internal citations omitted).

The court applies standard contract principles when considering a motion to enforce a settlement agreement. *Bradley v. Am. Household Inc.*, 378 F.3d 373, 380 (4th Cir. 2004); *Hensley*, 277 F.3d at 540. Therefore, the agreement "exists once offer, acceptance, and consideration are exchanged between the parties, regardless of whether the agreement is oral or written." *Clayton v. Ameriquest Mortg. Co.*, No. 1:-02CV415, 2004 WL 734978, at *3 (M.D.N.C. Apr. 5, 2004). "It is universally accepted that a manifestation of mutual assent is an essential prerequisite to the creation or formation of a contract," *Cochran v. Norkunas*, 919 A.2d 700, 708 (Md. 2007); there must have been "an actual meeting of the minds regarding contract

formation," *id.* at 713. If the parties do not agree on an "essential" contractual term, that "may indicate that the mutual assent required to make a contract is lacking." *Id.* Similarly, "if an agreement [is] so vague and indefinite that it is impossible to collect from it the full intention of the parties, it is void." *Quillen v. Kelley*, 140 A.2d 517, 523 (Md. 1958). Nonetheless, "courts are reluctant to reject an agreement, regularly and fairly made, as unintelligible or insensible," and therefore will sustain the agreement "if the meaning of the parties can be ascertained, either from the express terms of the instrument or by fair implication. The law does not favor, but leans against the destruction of contracts because of uncertainty." *Id.*

The filings in this case thus far clearly suggest that the parties reached an agreement. After the settlement conference, the parties advised Judge Quarles that the case settled as to all claims. Jan. 20, 2009 Settlement Order. Moreover, Defendant informed the Court on January 19, 2009, that "Sofitel has reached a settlement with the Plaintiff Rohn Products International LLC." Def.'s Mot. to Dismiss 1. Further, the ongoing correspondence between the parties between January and March 2009 did not show that the parties had not reached an agreement and were still negotiating. To the contrary, Plaintiff referred to "the settlement agreement entered into . . . on January 14, 2009," *see* Pl.'s Resp. Ex. H, and stated repeatedly that the January 14, 2009 agreement was "still in place" and "fully enforceable." *See* Pl.'s Resp. Ex. G & I. Defendant did not negate those assertions.

Yet, Defendant insists that "the parties were unable to reach agreement on critical terms of a settlement (i.e. the scope of release terms, the timing and amounts of settlement payments, and the terms of a confessed judgment)." Def.'s Opp'n 2. As noted, the parties' failure to agree on one of these terms would be fatal to the alleged existence of the contract. *See Cochran*, 919

A.2d at 713. Defendant does not challenge the parties' mutual assent to any other contractual terms. I will consider each of the allegedly disputed terms in turn.

With regard to the scope of the release, the parties agree that it was "the express intent of all Parties that the [Release] provisions constitute full, mutual general releases." *See* Pl.'s Resp. Ex. F (Pl.'s 1/20/09 Agr.); Def.'s Opp'n Ex. C (Def.'s 3/10/09 Agr., signed by Ms. Farnan under oath). Clearly, the parties had an "actual meeting of the minds" on the material aspects of this term. *See Cochran*, 919 A.2d at 713.

As for the timing and amounts of settlement payments, the aforementioned Confession of Judgment/Affidavit that Ms. Farnan signed on March 10, 2009, which Defendant attached to its Opposition to Motion to Enforce Settlement, Def.'s Opp'n Ex. C, is significant. Although Defendant characterizes the affidavit and the settlement agreement that accompanied it as a "settlement offer," Def.'s Opp'n 5, the affidavit nonetheless establishes that "[t]he Parties agreed to these terms during a mediation session . . . in the United States Court on January 14, 2009," namely: "Rohn agreed that it would release its claims against Sofitel in the Action provided, *inter alia*, that Sofitel pay Rohn the sum of Fifty Thousand Dollars ($50,000.00) on May 14, 2009, and Two Hundred Thousand Dollars ($200,000.00[)] to be received, on or before August 14, 2009, and the sum of $100,000.00 so as to be received on or before the one year anniversary of the initial payment." Farnan Aff. ¶ 4. According to Plaintiff, payments totaling $350,000 were to begin on July 14, 2009, with a payment of $300,000, followed by a $50,000 within one year thereafter. Pl.'s Mot. ¶ 4. Thus, it is clear that, on January 14, 2009, the parties mutually agreed to settle for a sum of $350,000, to be paid in installations, with the bulk of the payment due about six months after the formation of the agreement, and the remainder due within a year thereafter. The slight discrepancies in timing and amount of payment installments are not material and do

not negate the existence of the parties' January 14, 2009 agreement on this key settlement term. *Cf. Cochran*, 919 A.2d at 713 ("Failure of parties to agree on an *essential* term of a contract may indicate that the mutual assent required to make a contract is lacking.") (emphasis added).

With regard to the confessed judgment, Ms. Farnan's March 10, 2009 affidavit again is significant. In the affidavit, Defendant "confess[ed] judgment . . . and authorize[d] the entry of judgment against it and any and all assets thereof in favor of Rohn, in the sum of Four Hundred Sixty-Five Thousand Dollars ($465,000.00), plus interest accruing less any amounts paid to Rohn prior to entry of said confessed judgment." Farnan Aff. ¶ 3. Plaintiff agrees that the settlement called for a confessed judgment of $465,000, plus interest accruing. P.l.'s Mot. ¶ 4. Therefore, the parties mutually assented to a confessed judgment that would provide that Defendant would be liable for $465,000 if it failed to make the payments enumerated in the contract.

Because the parties had "an actual meeting of the minds regarding contract formation," and there was no "[f]ailure of parties to agree on an essential term of [the] contract," an enforceable settlement agreement formed on January 14, 2009. *See Cochran*, 919 A.2d at 713. Therefore, on the record before me, I find that the settlement agreement is enforceable as a contract, and I recommend that the Court GRANT Plaintiff's Motion to Enforce Settlement Agreement and enter an Order finding that there was a settlement agreement, the terms of which were:

    A. The Parties would exchange mutual general releases;
    B. Sofitel would make payment to Rohn in the amount of $350,000.00 dollars to be paid no later than August 14, 2010;
    C. Sofitel would provide a Confession of Judgment in the amount of $465,000.00 as security for its payment of the settled amounts;

D. Rohn would represent that it had not assigned the underlying Note, or any portion of or interest therein, to any third-party; and

E. The terms of the Settlement would remain confidential between the parties, albeit with the usual business and legal caveats.

Dated: <u>May 24, 2010</u>  　　　　　　　　　　　　　　　　　　<u>　　　　/S/　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Paul W. Grimm
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

lmy