IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | |
|---|---|
| ROHN PRODUCTS INTERNATIONAL, LC, | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-06-504 |
| SOFITEL CAPITAL CORP. USA, INC., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Rohn Products International, LC ("Rohn") sued Sofitel Capital Corporation USA, Inc. ("Sofitel") for breach of contract and fraud. Sofitel counterclaimed and impled MTS First Wireless, Ltd. ("MTS") and others. Pending are Rohn's objections to Judge Paul W. Grimm's Report and Recommendation (the "Report") about Rohn's March 16, 2009 motion to enforce settlement. For the following reasons, the objections will be overruled and the Report and Recommendation will be adopted.

I. Background

Rohn is a Florida corporation that manufactures and sells cellular telephone towers. Compl. ¶ 4, Ex. B. Sofitel, a Maryland corporation, finances projects in emerging markets. *Id.* ¶ 5; Answer ¶5. In 2003, Rohn entered into an agreement

with MTS, a Nigerian company, under which MTS bought cellular telephone towers from Rohn. Compl. ¶¶ 6-8, Ex. B. Sofitel financed the agreement through a promissory note, which required 12 monthly payments of $39,588.00. *Id.* ¶¶ 9-10. Only one payment was made. *Id.* ¶¶ 24-25.

In February 2006, Rohn sued Sofitel for its failure to pay under the note and fraudulently inducing Rohn to enter into the agreement with MTS. Paper No. 1. On April 10, 2006, Sofitel filed a third-party complaint against MTS and others for common law and contractual indemnity. Paper No. 9. On April 17, 2006 Sofitel counterclaimed against Rohn for civil conspiracy and tortious interference. Paper No. 11.

On January 14, 2009 the case was mediated before United States Magistrate Judge Gauvey. Paper No. 105. On January 19, 2009, Sofitel informed the Court that it had "reached a settlement with . . . Rohn," and moved to dismiss its third-party claims, Paper No. 120. On January 20, 2009, this Court issued a settlement order. Paper No. 121.[1]

Also on January 20, 2009, counsel for Rohn sent Sofitel's counsel a "proposed settlement agreement" that was "a more formal draft" of the "previously submitted settlement" (the

---

[1] The order stated that "this Court has been advised by the parties that the above action has been settled, including all counterclaims, cross-claims and third-party claims, if any." Paper No. 121.

2

"January 20 agreement"). Pl.'s Resp. Def. Opp'n Mot. Enforce, Ex. G. The agreement stated that "the Parties . . . settled this case before the District Court on January 14, 2009, but now wish to simply finalize that settlement." *Id.*

The parties continued to exchange emails until March 10, 2009, when Jeanne Farnan, as Sofitel's authorized representative, executed a settlement agreement (the "March 10 agreement").[2] Def.'s Opp'n Pl.'s Mot. Enforce, Ex. C. The March 10 agreement also stated that the parties had "settled this case before the District Court on January 14, 2009 and now wish to simply finalize that settlement." *Id.* The January 20 and March 10 agreements differed only in the timing of payment[3] and provisions about Sofitel's confession of judgment.[4] *Id.*

---

[2] Rohn's counsel has consistently referred to "the settlement agreement entered into . . . on January 14, 2009" and repeatedly stated that the January 14, 2009 agreement was "still in place" and "fully enforceable." Sofitel did not challenge these assertions. *See* Pl.'s Resp. Mot. Enforce, Ex. H, G, & I.

[3] Under the January 20 agreement, Sofitel was to pay Rohn $300,000 by July 14, 2009, and $50,000 within a year. Pl.'s Resp. Def.'s Opp'n Mot. Enforce, Ex. G. The March 10 agreement required Sofitel to pay $50,000 by May 14, 2009, $200,000 by August 14, 2009, and $100,000 within a year. Def's Opp'n Pl's Mot. Enforce, Ex. C.

[4] The January 20 agreement required Sofitel to execute a confessed judgment of $465,000, which Rohn could enforce if Sofitel failed to make timely payments. The judgment was to "accrue interest at the legal rate." Pl.'s Resp. Def.'s Obj., Paper No. 136, Ex. G at § 2. The March 10 agreement did not require a confession of judgment. Instead, Farnan attached an affidavit that Sofitel:

Upon receipt of the March 10 agreement, Rohn's counsel emailed Sofitel that he would not "accept unilateral changes from [Sofitel] on items that have legal significance." Def.'s Opp'n Pl.'s Mot. Enforce, Ex. F. On March 13, 2009 Sofitel's counsel informed Rohn's counsel "that Sofitel was withdrawing its . . . authority to settle" the matter. Pl.'s Mot. Enforce 3.

On March 16, 2009, Rohn filed a motion to enforce the settlement agreement, asserting that an enforceable settlement agreement had been reached during the January 14 mediation. *Id.* 2.[5] Sofitel argued that the correspondence between the parties and the draft settlement agreements showed that "the parties were unable to reach agreement on critical terms of a settlement." Def.'s Opp'n Pl.'s Mot. Enforce 2.

---

> confess[ed] judgment . . . and authorize[d] the entry of judgment against it and any and all assets thereof in favor of Rohn, in the sum of [$465,000.00], plus interest accruing less any amounts paid to Rohn prior to entry of said confessed judgment."

Jeanne Farnan Aff. ¶ 3, Mar. 10, 2009.

[5] According to Rohn, the agreement required that: (1) the parties exchange mutual general releases; (2) Sofitel pay Rohn $300,000 by July 14, 2009 and $50,000 by July 14, 2010; (3) Sofitel execute a confessed judgment for $465,000; (4) Rohn represent that it had not assigned the underlying note, or any interest therein; and (5) the terms of the settlement be kept confidential. Pl.'s Mot. Enforce 2.

4

On August 12, 2009, Rohn's motion to enforce the settlement was referred to Magistrate Judge Gauvey, who recommended that "the Court find that a settlement ha[d] occurred as a matter of law" during the January 14 mediation. Paper No. 133. This Court adopted Judge Gauvey's recommendation, but noted that "an agreement to settle is not necessarily a contract" and that "it is possible that the agreement reached at the mediation is not a contract." Paper No. 137.

On February 23, 2010, the case was referred to United States Magistrate Judge Paul W. Grimm for an evidentiary hearing to determine whether the agreement reached during the mediation was an enforceable contract.[6] Judge Grimm's Report recommended that the Court find the parties had formed an enforceable settlement agreement during the mediation. Paper No. 145.

Judge Grimm also recommended that the Court enter an order finding that the settlement terms were: (1) the parties would exchange mutual general releases; (2) Sofitel would pay Rohn $350,000 by August 14, 2010; (3) Sofitel would provide a confessed judgment of $465,000 as security for the settlement; (4) Rohn would represent that it had not assigned the underlying note, or any portion of the interest therein, to any third-

---

[6] At the parties' request, Judge Grimm based his determination on written submissions. Paper No. 145.

5

party; and (5) the terms of the Settlement would remain confidential between the parties.  *Id.*

On June 7, 2010, Rohn filed its objections to the Report.  Paper No. 147.

II. Analysis

    A.  Standard of Review

A reviewing judge "shall make a de novo determination of those portions of the [magistrate judge's] report . . . to which objection is made."  28 U.S.C. § 636 (b)(1)(C) (2006).  The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions."  *Id.*

    B.  Rohn's Objections

Rohn objects to the order proposed in Judge Grimm's Report and requests it be modified to: (1) include a finding that Sofitel is in default on the settlement agreement; (2) require Sofitel to immediately execute a confession of judgment; (3) include "the protection of interim relief . . . restraining [Sofitel] from dissipating any of its assets" until the judgment is satisfied, and (4) provide Rohn with an award of "reasonable attorneys' fees" in the amount of $20,000.  Paper No. 147.

C.  Judgment of Default

Rohn seeks to modify Judge Grimm's Report to include a finding that because the "bulk of the settlement amount was due to be paid . . . prior to August 15, 2009 . . . Sofitel is now in default." Paper No. 147.

The parties agreed that default on the settlement would occur if "Sofitel fail[ed] to pay the Settlement Amount on or before the dates set forth."[7] Upon default, the parties agreed that "Rohn may, without further notice to Sofitel . . . direct that the Confession of Judgment be released from escrow and execute upon [it]." *Id.*

Judge Grimm found that during the January 14 mediation the parties agreed: (1) to settle for $350,000, (2) that most of the payment would be due by August 14, 2009, and (3) that the remainder would be due within a year. Paper No. 145.[8] Neither

---

[7] Pl.'s Resp. Def. Obj., Ex. G at § 2. All draft settlement agreements exchanged after the mediation include provisions that Sofitel's failure to make timely payments was a default. *See* Pl.'s Mot. Enforce, Ex. G; Def.'s Opp'n Pl.'s Mot. Enforce, Exs. C & D. Thus, any untimely payment was a default. *See Quillen v. Kelley,* 140 A.2d 517, 523 (Md. 1958) ("if the meaning of the parties can be ascertained, either from the express terms of [an] instrument or by fair implication" the agreement is enforced).

[8] All draft agreements provided that most of the payment was due before August 14, 2009 and that final payment would be due within a year. *See* Pl.'s Mot. Enforce, Ex. G; Def.'s Opp'n Pl.'s Mot. Enforce, Exs. C & D. Thus, the parties mutually assented to that payment structure. *See Quillen,* 140 A.2d at 523.

7

party disputes these findings. Thus, Sofitel's failure to pay most of or all the settlement August 14, 2009, or to pay by August 14, 2010 was a default.

Rohn filed its motion to enforce the settlement on March 16, 2009, before any payment was due.[9] Rohn has provided no evidence that Sofitel did not make timely payments. Thus, a finding that Sofitel has defaulted by failing to make timely payments would be unfounded.[10] Judge Grimm's Report will not be modified.

D. Confession of Judgment

Rohn requests that Judge Grimm's proposed order be modified to direct Sofitel to execute immediately a confession of judgment for $465,000, as required by the settlement agreement. Paper No. 147. Rohn seeks specific performance of the settlement agreement.

Contract principles apply to motions to enforce settlement agreements. *Bradley v. Am. Household Inc.*, 378 F.3d 373, 380 (4th Cir. 2004). Specific performance of a contract is an

---

[9] Rohn initially argued that Sofitel committed anticipatory breach of the settlement when it filed its motion to enforce. Pl.'s Mot. Enforce 4. Rohn has provided no authority for that argument.

[10] *See Collins/Snoops Assoc., Inc. v. CJF, LLC*, 988 A.2d 49, 57-58 (Md. Ct. Spec. App. 2010) ("On a claim for breach of contract, the plaintiff . . . bears the burden of proving all elements of the cause of action.").

"extraordinary" equitable remedy. *Cattail Assoc., Inc. v. Sass,* 170 Md. App. 474, 500-01 (Md. Ct. Spec. App. 2006). Under Maryland law, it should be granted only when "more traditional remedies, such as damages, are either unavailable or inadequate." *Id.* at 501.

Rohn has not established why an award of money damages would be insufficient. To the contrary, Rohn has requested that the Court enter judgment "in the amount of 465,000 plus interest" against Sofitel. Pl.'s Mot. Enforce 4. It is unclear why a confession of judgment is necessary. Accordingly, Judge Grimm's Report will not be modified to direct Sofitel to execute a confession of judgment.

E. Protection of Interim Relief

Rohn seeks a post-judgment injunction preventing Sofitel from dissipating its assets until the settlement agreement is satisfied.

A party seeking that relief must "plead and . . . prov[e] facts which show that he has no adequate remedy at law." *Burman v. Phoenix Worldwide Indus.,* 384 F. Supp. 2d 316, 341 (D.C. Cir. 2005)(internal citations omitted). This showing requires the plaintiff to demonstrate why post-judgment remedies such as attachment and garnishment would be ineffective.[11]

---

[11] *See Smith v. Mallick,* No. 96-cv-2211, 2007 WL 2153241, at *2-*4 (D.D.C. July 26, 2007)("[T]he easy availability of a means of

Rohn has not shown that its legal remedies are insufficient to secure payment. Judge Grimm's Report will not be modified to include injunctive relief.

F. Attorneys' Fees

Rohn also requests attorneys' fees for filing its motion to enforce the settlement. Paper No. 147. The settlement agreement entitles Rohn to "reasonable attorneys' fees incurred in enforcing . . .[the] Agreement." Pl.'s Resp. Def.'s Objs., Ex. G at § 2.[12]

"A contractual obligation to pay attorneys' fees generally is valid and enforceable in Maryland" unless there has been "misconduct or fraud, overreaching, misrepresentation, or other grounds for voiding the contract." *Atl. Contracting & Material Co. v. Ulico Cas. Co.,* 380 Md. 285, 844 A.2d 460, 477-78 (2004).[13] A party's fee request must be reasonable, even absent a contract provision requiring reasonableness. *Id.* The

---

enjoining a judgment debtor from dissipating his assets would relieve the judgment creditor of any need to comply with local attachment and garnishment statutes.")(citing *Grupo Mexicano v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999)).

[12] All other versions of the agreement also provide Rohn attorneys' fees for enforcement of the settlement. Pl.'s Mot. Enforce, Ex. G; Def.'s Opp'n Pl.'s Mot. Enforce, Exs. C & D.

[13] "In a diversity case, absent a conflicting applicable federal rule of procedure, state law governs not only the actual award of attorneys' fees but also the method of determining those fees." *Dunkin' Donuts Inc., v. Guang Chyi Liu,* 2002 WL 31375509, at *2 (E.D. Pa. Oct. 17, 2002)(*citing Northern Heel Corp. v. Compo Indus. Inc.,* 851 F.2d 456, 475 (1st Cir. 1988)).

10

reasonableness of attorneys' fees must be established by competent evidence, which "specifie[s] the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged." *Rauch v. McCall,* 134 Md. App. 624, 761 A.2d 76, 85 (Md. Ct. Spec. App. 2000).

Rohn requests attorneys' fees of $20,000. Paper No. 147. It asserts that this request is "reasonable," but presents no supporting evidence. *Id.* Accordingly, Judge Grimm's Report will not be modified to include an award of attorneys' fees.

III. Conclusion

For the reasons stated above, Rohn's objections to Judge Grimm's Report and Recommendation will be overruled. Judge Grimm's Report and Recommendation will be adopted as an order of the Court.

October 6, 2010  _____/s/_____
Date  William D. Quarles, Jr.
United States District Judge